Hyman Korn, J.
In this taxpayer’s suit, plaintiff complains of an affiliation contract made on July 1,1962 between defendant the City of New York, acting through the defendant Commissioner of Hospitals of the City of New York, and the defendant the Mount Sinai Hospital, relating to medical care and related services at Gfreenpoint Hospital, and of such a contract which is about to be made in relation to the City Hospital Center at Elmhurst. She moves now for a temporary injunction restraining completion of the proposed affiliation contract. Plaintiff charges generally that the enabling legislation is unconstitutional upon the ground that it unlawfully delegates legislative power to the Commissioner without laying down policy and guidelines, and that the contract is illegal and unconstitutional upon the ground that it unlawfully delegates police power to the Mount Sinai Hospital and diminishes the city police power and its exercise.
Plaintiff does not challenge the crisis and emergency which, in the judgment of the Commissioner and the Board of Hospitals, required the execution of the subject contracts nor, indeed, of several others made prior thereto.
As a result of surveys, it was found that for many years no American medical school graduate accepted internship in 11 nonaffiliated municipal hospitals, for the reason that the intern programs were not professionally attractive. Such condition, it was found, did not exist in affiliated hospitals such as Bellevue, Bronx Municipal Center, and Kings County, which had the advantages of medical schools or voluntary teaching hospitals. It is further asserted that the best medical care in the City of New York and, for that matter, in the United States, is to be found in hospitals which are affiliated with medical schools or *1023 voluntary teaching hospitals. As a consequence of deterioration in service in nonaffiliated municipal hospitals, services in some were discontinued, as well as the services of foreign-trained interns and residents, for lack of qualifications and adequate medical care. In some, there was discontinuance of in-patient service. Accreditation by the Joint Commission on Accreditation was lost. There have already been a number of affiliations, and several voluntary hospitals have been providing ambulance service as a supplement to ambulance service rendered by municipal hospitals.
Unless there is a total lack of power to act, plaintiff must fail (Kaskel v. Impellitteri, 306 N. Y. 73). The Department of Hospitals is charged with the duty to “ maintain and operate all hospitals, sanatoria, almshouses or other institutions of the city for the care of sick, injured, aged or infirm persons * * * and shall have charge and control of the ambulance service provided by the city ” (New York City Charter, § 583-a) and the function of the municipal hospital is ‘ ‘ the care and treatment of the indigent poor [sick] of the city and for the protection of the public health ” (New York City Charter, § 587). The power of the department is vested in the Commissioner, and the Board of Hospitals is vested with the power to “ Establish and promote the highest possible standards for the care of sick, injured, aged and infirm persons to be complied with by institutions under the jurisdiction of * * * the department ” (New York City Charter, § 583-b, subd. 2). These are powers stated in the broadest language concerning police power, of high public concern and responsibility. Adequate medical care of the indigent sick through municipal hospitals and ambulance service is at the same time the purpose and the guideline. Those charged with the responsibility of the maintenance of the hospitals and of the services have already the implied power to contract and to exercise discretion in securing to the indigent sick the required services for their medical care (People v. Malmud, 4 A D 2d 86). No suggestion is advanced of the nature of a guideline by which the techniques and capacities of administrators and medical staff can be channeled as to the constitutional manner in which an indigent patient may be brought to health through hospital care. The entire complex is implicit in the direction to serve and to care.
With these general powers, the defendants insist that it was within their permissible limits of discretion to contract. Certainly it would appear to be so, if indispensable to the objective to cure an evil found to exist in nonaffiliated municipal hospitals *1024 and concerning which no dissent is heard. The defendants urge that the adoption of subdivision b of section 583-a of the City Charter was not required to confer the power exercised, and that the contracts are valid without it and under prior existing law. The City Charter provision is as follows: “ b. Notwithstanding any other provision contained in this chapter, the commissioner, with the approval of the board of estimate, is authorized from time to time to enter into contracts with any university, medical school or non-profit hospital, organized pursuant to the laws of the state of New York, whereby such university, medical school or non-profit hospital shall agree to provide and supervise under his general supervision all or part of the professional and related staff in the operation of any institution or service under the jurisdiction of the department. The personnel so provided by such university, medical school or non-profit hospital shall not be deemed to be employees of the city of New York.”
The report recommending its adoption had the following to say (City Record, April 19, 1962, p. 2609) :
“ The amendment clearly spells out the powers of the Commissioner of Hospitals, subject to Board of Estimate approval, to enter into contracts with medical schools and non-profit voluntary hospitals under which such institutions will render medical care in certain municipal hospitals. It is generally agreed that great advances in the quality of the medical care rendered have occurred under such contract arrangements.
‘ ‘ The proposed amendment will remove any doubt as to the legality of certain procedures adopted by the Commissioner of Hospitals, procedures deemed necessary to provide adequate hospital service. Although these procedures are not new, some question has been raised concerning their validity. We do not consider the question well-founded, but any possible doubt should be removed.”
Not only is the contract approved by the Board of Estimate, but it places the entire operation of the hospital under the supervision of the Commissioner. If the Commissioner and the Board of Hospitals have the power to do what will be done under the contract, no principle affecting constitutional grant of power will invalidate its accomplishment through contractual arrangement of the kind here involved. In performing his duties, the Commissioner is not legislating, and in delegating that performance under his supervision by contract, the contracting party is not legislating. If the Commissioner has the power to furnish hospital services — which, of course, he has — *1025 and it is his judgment that such service is inadequate without association with a medical school or voluntary teaching hospital, then it is within his conferred power to secure that kind of service, in order properly to execute his function. No impediment is observed to the accomplishment of that end through the present contractual arrangement.
Finally, as already indicated, not alone the Greenpoint Hospital but several other municipal hospitals have been contractually affiliated. The present attempt to restrain another affiliation does not warrant injunctive relief pendente lite. The motion is denied.